**Mabel Ryan PICQUET et al.**

v.

**AMOCO PRODUCTION COMPANY et al.**

**Civ. A. No. 81–108–A.**

United States District Court, M. D. Louisiana.

May 7, 1981.

Steven O. Medo, Jr., Mars & Medo, New Orleans, La., for plaintiffs.

Tom F. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

This action presents a question of federal diversity jurisdiction which, as far as we can tell, has not yet been considered by the Court of Appeals for the Fifth Circuit. That issue, stated simply, is whether a federal district court has authority in the protection of its jurisdiction to ignore a colorable transfer of ownership, the purpose of which is to deprive the federal courts of jurisdiction.

### Facts

Plaintiffs, except Mabloryn Corporation ("Mabloryn"), are all citizens of Louisiana and California. Defendant, Amoco Production Company ("Amoco"), is a corporate citizen of Delaware with its principal place of business in Chicago; and defendant, Patrick R. Garrett, an Amoco employee, is a citizen of Louisiana. Mabloryn is a corporate citizen of Delaware.

Plaintiffs are the owners of an undivided interest in land in Pointe Coupee Parish, Louisiana, which is subject to mineral leases in favor of Amoco. Plaintiffs' claim is that the leases have expired because no well has been drilled within the primary term of the leases and that a "Declaration of Pooling" filed by Amoco and Gulf Oil Corporation shortly before the expiration of the primary term is invalid and ineffective to extend the leases for various reasons which are alleged. Plaintiffs also allege that they entered an "option agreement" in 1979 with Amoco and that by reason of representations made by Garrett on Amoco's behalf, the "option" was exercised and that a new lease is now in effect with which Amoco should be required to comply. In the alternative, plaintiffs claim damages by reason of breach of an alleged "oral contract" entered into by Garrett on behalf of Amoco.

The action was initiated in the Eighteenth Judicial District Court for the Parish of Pointe Coupee and was timely removed to this Court by Amoco, only. Plaintiffs have filed a motion to remand predicated upon the fact that the defendant Garrett is a citizen of Louisiana, as are several of the plaintiffs, and the further fact that Mabloryn is a corporate citizen of Delaware, as is the defendant Amoco. Thus, there is not complete diversity of citizenship between all plaintiffs and all defendants.

### Issues

The motion to remand raises two issues: (1) whether Garrett has been "fraudulently joined" as a defendant for the purpose of preventing federal jurisdiction and (2) whether the Court may inquire into the transfer by Mrs. Mabel Ryan Picquet to Mabloryn of an undivided interest in the property.

### The Status of Garrett

Plaintiffs allege in paragraph XXV of the petition that defendant Garrett "acting for and on behalf of Amoco and as the authorized agent and representative" of Amoco assured plaintiffs that Amoco would exercise an option relative to the mineral leases, that "this assurance" amounted to an exercise of the option by Amoco and that plaintiffs are entitled to specific performance requiring Amoco to deliver a new lease containing terms alleged.

In paragraph XXVI of the petition, plaintiffs allege in the alternative that if they are not entitled to demand specific performance of the "option," then the representations and assurances of Garrett made individually "and on behalf of Amoco constitutes a verbal contract to exercise the option for breach of which plaintiffs are entitled to damages."

These allegations make it plain that Garrett was acting as an agent for a disclosed principal, not for himself. Plaintiffs specifically allege that Garrett was authorized by Amoco to make the alleged representations and plaintiffs seek to hold Amoco liable in damages for breach of the alleged verbal contract made on its behalf by Garrett. There is no allegation that Garrett made any unauthorized representations or that he pledged his own responsibility or in any other fashion personally bound himself. These facts do not, under Louisiana law, support a cause of action against the agent of a disclosed principal. *Castille v. Folck*, 338 So.2d 328 (La.App. 3rd Cir. 1976), and cases discussed therein.

Accordingly, Garrett has been improperly joined for the purpose of preventing federal jurisdiction. This amounts to "fraudulent joinder" under the jurisprudence and will not prevent removal of the action to this Court. The jurisprudence talks in terms of "fraudulent" joinder, *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921), but as this Court has pointed out before, such joinder is not actually fraudulent, though improper. *Chevron, USA, Inc. v. Aguillard*, 496 F.Supp. 1038 (M.D.La.1980).

For these reasons, the fact that Garrett is a citizen of Louisiana will not defeat diversity jurisdiction.

### The Status of Mabloryn

Amoco has taken the deposition of Mrs. Picquet, the plaintiff who transferred an interest to Mabloryn, and that deposition has been filed as evidence, along with documentary evidence relating to the corporation. According to the certificate of the Secretary of State of Delaware, Mabloryn was incorporated in Delaware on September 4, 1980. All corporate documents were executed in New Orleans. On September 12, 1980, Mrs. Picquet transferred an undivided 1/108th interest in the land in Pointe Coupee Parish to Mabloryn in consideration of the receipt of 6,000 shares of Mabloryn stock. Mrs. Picquet, an elderly lady, was not at all sure why Mabloryn was formed and had even forgotten that she had transferred an interest in the land in exchange for the shares of Mabloryn stock. This, despite the fact that she is president of the corporation and its sole shareholder. Her impression was that Mabloryn had something to do with taxes and was formed on the advice of her attorney. She also had the impression that Mabloryn was formed because Amoco did not come through as plaintiffs expected it to, thus prompting this lawsuit. Mrs. Picquet, who inherited her interest in the property, as did the other plaintiffs, was not at all aware of the details of the negotiations with Amoco, or the formation of Mabloryn, or of the transfer by her to Mabloryn. She testified that she relied upon her attorney to take care of those matters.

The evidence convinces the Court that, while formation of Mabloryn could conceivably serve some estate planning function, the sole motive for incorporating it in Delaware and in transferring the undivided interest in the property was to prevent the action which the plaintiffs contemplated filing against Amoco from being removed from state to federal court.

Counsel for plaintiffs argues that Delaware was chosen because of its flexible, modern corporate laws. That argument is unconvincing. Louisiana now has a flexible, modern corporate law which is the equal of Delaware's. Mrs. Picquet remains as the owner of the property and the sole owner of all of the shares in the corporation to which she transferred a portion of her interest. She received no consideration except the shares of Mabloryn, which owns nothing except the undivided interest transferred to it by Mrs. Picquet. The Court is convinced that Mabloryn was formed and

the transfer was made for the purpose of defeating federal diversity jurisdiction and preventing the removal of the action from state to federal court.

### Contentions of the Parties

Plaintiffs contend that the formation of the corporation in Delaware and the transfer to it were legal and valid actions under state law and that the Court is prohibited from inquiring into the motives of people in connection with lawful action taken regarding property which they own. Accordingly, they argue that since there is a Delaware plaintiff and a Delaware defendant, the cause of action must be remanded to state court. Amoco argues that the transfer to the corporation was clearly a sham, accomplished for the purpose of preventing removal and that under the same reasoning as is applied by federal courts in considering "fraudulent joinder" of parties defendant, the Court can ignore the transaction and maintain jurisdiction.

### Discussion

We begin with the undisputed proposition that federal district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $10,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). A corollary to this proposition is that the defendants in any such action brought against them in state court have the right to remove it to federal court. 28 U.S.C. § 1441(a).

In the portion of this opinion related to the status of defendant Garrett, we have applied the judicially created theory of "fraudulent joinder" of parties defendant. The notion underlying this entire theory is that the Congress has by statute granted defendants in certain state court actions the right to remove and that, in order to protect that jurisdiction, federal courts have not only the power but also the duty to inquire into and to ignore joinder of parties defendant against whom no real cause of action is alleged and who are joined in order to prevent federal jurisdiction. Plaintiffs argue that schemes to defeat federal jurisdiction by means of "fraudulent joinder" of parties *plaintiff* should be subjected to the same judicial scrutiny as "fraudulent joinder" of parties defendant. In either case, the result is to deprive the defendants of the right granted to them by the Congress to remove an action to federal court through the manipulative action of the plaintiffs.

The Supreme Court has accepted and applied the theory of "fraudulent joinder" of parties defendant. See *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907), where the Court commented:

"... [T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." (27 S.Ct. at 188).

The Supreme Court has also refused to accept an attempt to defeat federal jurisdiction through the device of joining a non-diverse plaintiff who had no real interest in the action. The Court in, *In the Matter of the State of Nebraska*, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908), held that it was the duty of the federal courts to determine whether the State of Nebraska was an actual party, or simply joined as a plaintiff in order to defeat federal jurisdiction.

Based on this authority, one may make a strong argument that federal courts ought to examine alleged "fraudulent joinder" of plaintiffs as well as such joinder of defendants where the motive is to prevent federal jurisdiction.

The problem with this approach is that the Supreme Court has spoken several times in this area with contrary results.

In *Provident Savings Life Assurance Society v. Ford*, 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885), the Court refused to inquire into an alleged colorable assignment of a judgment for the purpose of preventing removal, noting that such a sham transaction "would be a defense to the action [in

state court] and not a grounds of removing that cause into a federal court." (5 S.Ct. at 1107)

In *Oakley v. Goodnow*, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61 (1886), the Court followed the holding of *Provident Savings.* In both the *Provident Savings* and the *Oakley* cases, the Court noted the 1875 Act of Congress (now 28 U.S.C. § 1359), which granted federal courts power to ignore colorable assignments made for the purpose of *creating* federal jurisdiction. In *Oakley,* the Court commented:

> "Under the law as it now stands resort can only be had to the state courts for protection against the consequences of such an encroachment on the rights of a defendant." (6 S.Ct. at 945)

Despite the recommendation of the American Law Institute, Congress has not changed the law in that regard since 1886.

The following year the Court again affirmed its prior holdings in *Leather Manufacturers' National Bank v. Cooper*, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816 (1887).

More recently, in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), the Court considered a wrongful death action brought by the administratrix in state court, removed by defendant to federal court and voluntarily dismissed by the plaintiff three times. After the third filing, removal and dismissal, the administratrix resigned and a nondiverse administrator was qualified, who promptly filed the fourth action in state court. Defendant again attempted removal and the lower courts refused to remand. The Supreme Court reversed, declining to inquire into the motives of the parties in securing a new and diverse administrator:

> "... The case falls clearly within the authorities announcing the principle that in a removal proceeding the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined...." (52 S.Ct. at 87)

The Court also pointed out that it would not go behind the decree of the state probate court to inquire into the motives of the parties and apparently concluded that, since under state law the administrator was the proper party to bring the action, there was no occasion to inquire into motives.

*Mecom* and the Supreme Court's earlier decisions, if applied literally, would preclude any inquiry into Mrs. Picquet's transfer to the Delaware corporation. The Court's decision in *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), has been construed by several lower federal courts as "injecting a new note of realism into the determination of diversity jurisdiction." *Miller v. Perry*, 456 F.2d 63 (4th Cir. 1972); *Gentle v. Lamb-Weston, Inc.*, 302 F.Supp. 161 (D.Me.1969); *Carter v. Seaboard Coast Line Railroad Co.*, 318 F.Supp. 368 (D.S.C.1970); *McClanahan v. Snodgrass*, 319 F.Supp. 913 (N.D.Miss.1970). The Fourth Circuit seems to have accepted the *Kramer* case as, in effect, burying *Mecom.* See *Messer v. American Gems, Inc.*, 612 F.2d 1367 (4th Cir. 1980), *cert. den.* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). *Sadler v. New Hanover Memorial Hospital, Inc.*, 588 F.2d 914 (4th Cir. 1978); and *Miller v. Perry, supra. Contra,* see, *Arant v. Stover*, 307 F.Supp. 144 (D.S.C. 1969); *Calhoun v. Calhoun*, 482 F.Supp. 347 (E.D.Okl.1978); *Herrick v. Pioneer Gas Products Co.*, 429 F.Supp. 80 (W.D.Okl. 1977).

The *Kramer* case involved application of 28 U.S.C. § 1359, which prohibits federal jurisdiction where any party "by assignment or otherwise" has been improperly or collusively made or joined *in order to invoke federal jurisdiction.*" In that case an assignment of a claim had been made for the express purpose of creating federal jurisdiction, which, of course, is the converse of the present case. The Supreme Court examined the transaction and concluded that the assignment was "improperly or collusively made" within the meaning of the statute. To the argument that the assignment was completely valid under state law, the Court replied:

> "... The existence of federal jurisdiction is a matter of federal, not state law...." (89 S.Ct. at 1490)

In a footnote in the *Kramer* case, the Court also commented that, because the assignment was of only a 5 percent interest, there was no occasion to reexamine prior jurisprudence in which the Court has held that complete and absolute assignments were not "improperly or collusively made" regardless of the transferor's motive. The Court also commented that it was not necessary to reconsider cases involving the appointment of administrators in order to create federal jurisdiction, citing several such cases, and further commented:

> "... Cf. *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). Cases involving representatives vary in several respects from those in which jurisdiction is based on assignments...." (89 S.Ct. at 1490, n.9.)

In *Miller v. Perry, supra*, the Fourth Circuit concluded that *Kramer* has so eroded the Supreme Court's holding in *Mecom* that federal courts are now free to inquire into the motives of those seeking appointment of administrators for the purpose of either creating or prohibiting federal diversity jurisdiction:

> "We are obliged to read *Kramer* as injecting a new note of realism into the determination of diversity jurisdiction. Diversity jurisdiction exists for the protection of the noncitizen who is obliged to sue or be sued in the state of his adversary. It is for that reason that the device of appointing an out-of-state representative has been condemned. It is for that reason that state statutes or decisions that require a noncitizen to appoint an in-state representative should not have the effect of depriving the noncitizen of the federal forum that Congress has provided him." (456 F.2d at 67)

In *Gentle v. Lamb-Weston, Inc., supra*, and *McClanahan v. Snodgrass, supra*, district courts have extended *Kramer's* reasoning beyond the appointment of administrators to include the assignment of small interests in claims where the motive was clearly to prevent diversity jurisdiction. Here we have the assignment of a small interest, not in the claim but in the land which is the subject of the dispute.

The Court concludes that despite the absence of a statute specifically granting district courts the authority to inquire into assignments made for the purpose of defeating federal jurisdiction, the existence of diversity jurisdiction and the removal statute, 28 U.S.C. § 1441, grant the Court the power to protect its own jurisdiction. The reasoning of *Miller v. Perry* is sound and considering the congressional purpose, the protection of the noncitizen who is obliged to sue or to be sued in the state of his adversary, a federal district court ought to inquire into improper or fraudulent joinder of plaintiffs as well as improper or fraudulent joinder of defendants where the motive is to defeat federal jurisdiction. Here the Delaware corporation was not formed until plaintiffs had already determined to institute an action against Amoco. The assignment was made shortly before the action was instituted and the Court is convinced that the overriding motive for the assignment of the fractional interest was to prevent removal of the suit to the federal court. Under these circumstances, the assignment of this fractional interest should not have the effect of depriving Amoco, the noncitizen, of the federal forum which Congress has provided.

The question is a close one and not entirely free from doubt. Under these circumstances, the Court hereby certifies that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation, as required by 28 U.S.C. § 1292(b). Accordingly, should they desire, plaintiffs may appeal this interlocutory decision.

For the foregoing reasons, the motion to remand is hereby DENIED.