**JMTR ENTERPRISES, L.L.C., JMTR Management Co., Inc., James H. Mitchell, III and Mary A. Mitchell, Plaintiffs,**

v.

**Gloria DUCHIN, Gloria Duchin, Inc. and Duchin Realty, Inc., Defendants.**

**No. Civ.A. 98–11910–WGY.**

United States District Court, D. Massachusetts.

Feb. 18, 1999.

Danielle E. deBenedictis, deBenedictis, Miller & Blum, Boston, MA, for JMTR Enterprises, LLC and JMTR Management Co., Inc., plaintiffs.

James H. Mitchell, III, Waltham, MA, plaintiff pro se.

Mary A. Mitchell, Waltham, MA, plaintiff pro se.

Elliot D. Lobel, David S. Nalven, Boston, MA, Allen P. Rubine, Winograd, Shine & Zacks, P.C., Providence, RI, for Gloria Duchin, Gloria Duchin, Inc. and Duchin Realty, Inc., defendants.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. *Introduction*

JMTR Enterprises, L.L.C, JMTR Management Co., Inc., James H. Mitchell, III, and Mary A. Mitchell (collectively "the JMTR Group") bring this breach of contract action against Gloria Duchin ("Mrs. Duchin"), Gloria Duchin, Inc. ("Duchin Inc."), and Duchin Realty, Inc. ("Duchin Realty") (collectively "the Duchin Group"). Mrs. Duchin and Duchin Realty seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) alleging lack of personal jurisdiction over them. The Duchin Group also seeks dismissal under Federal Rule of Procedure 12(b)(3) on the ground that venue is improper. The JMTR Group, which opposes these motions, has filed a motion to remand the case to the Massachusetts Superior Court sitting in and for the County of Middlesex ("Middlesex Superior Court").

### II. *Background*[1]

James H. Mitchell ("Mr. Mitchell"), a resident of Massachusetts, is the chairman and president of Somerset Capital Corporation ("Somerset"), a leverage buyout firm incorporated in Delaware and headquartered in Waltham, Massachusetts. Mary A. Mitchell ("Mrs. Mitchell"), a resident of Massachusetts, is the senior vice president of Somerset.

Duchin Inc. is a Rhode Island corporation headquartered in East Providence, Rhode Island. It manufactures metallic Christmas ornaments and other novelty items. Mrs. Duchin, a Rhode Island resident, is the sole shareholder of Duchin Inc. and its chief executive officer. Duchin Realty, a Rhode Island corporation headquartered in East Providence, Rhode Island, owns land and buildings in East Providence. Duchin Realty leases that property to Duchin Inc. for its manufacturing and corporate facilities.

On or about April 10, 1997, Mrs. Duchin and Duchin Inc. retained Gottesman Company ("Gottesman"), a New York investment bank, to sell Duchin Inc. According to the JMTR Group, Gottesman acted as an authorized agent of (1) Mrs. Duchin and Duchin Inc. in the sale of Duchin Inc.'s

---

1. For purposes of this motion to dismiss, the Court accepts the factual allegations contained in the JMTR Group's Verified First Amended Complaint as true. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995).

assets, (2) Mrs. Duchin in her consulting agreement with the buyer of Duchin Inc., and (3) Duchin Realty in a possible lease of its property to the buyer of Duchin Inc.

On or about October 1, 1997, Marvin Rosenbaum ("Rosenbaum"), senior vice president of Gottesman, introduced Somerset and the Mitchells to Mrs. Duchin, Duchin Inc., and Duchin Realty. On November 20, 1997, the Mitchells met with Mrs. Duchin. Somerset and the Mitchells spent the next five months negotiating a term sheet ("the Term Sheet") for Somerset, on behalf of a buyer, to purchase most of the assets of Duchin Inc., to sign a consulting agreement with Mrs. Duchin, to sign a long-term lease with Duchin Realty, and for a management company to receive the management fees. On or about April 20, 1998, the parties signed the Term Sheet. Mrs. Duchin signed the Term Sheet both in her individual capacity and as the chief executive officer of Duchin Inc. *See* Pl. Mem.Opp. Dismissal, Ex. B. The parties subsequently agreed that Somerset would create a new entity to purchase Duchin Inc.

The JMTR Group now claims that the Duchin Group has breached several provisions of the Term Sheet. The JMTR Group asserts claims for breach of contract (Count One), unfair and deceptive trade practices under Mass.Gen.L. ch. 93A, § 11 (Count Two), specific performance (Count Three), fraud, misrepresentation, and deceit (Count Four), injunctive relief (Count Five), quantum meruit (Count Six), declaratory judgment (Count Seven), and breach of the covenant of good faith and fair dealing (Count Eight).

Before bringing suit, the Mitchells and Somerset assigned all of their claims against the Duchin Group to JMTR Enterprises, L.L.C. ("JMTR Enterprises"), a Rhode Island limited liability company created on July 22, 1998. *See* Def.Mem.Opp. Remand, Ex. B. JMTR Enterprises filed this action in the Middlesex Superior Court on July 27, 1998. On August 19, the Duchin Group removed the case to federal court on the basis of diversity of citizenship. *See id.,* Ex. D. On August 21, JMTR Enterprises dismissed its own complaint without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(i). *See id.,* Ex. E. The same day, the Mitchells formed a Rhode Island corporation called JMTR Management Co., Inc. ("the Management Company"), reclaimed a portion of the claims they had assigned to JMTR Enterprises, and reassigned that portion to the Management Company. *See id.,* Ex. F; Ver.Comp. ¶ 25. On August 24, JMTR Enterprises, along with the Management Company, filed a second complaint in the Middlesex Superior Court. *See* Def.Mem.Opp. Remand, Ex. A. The Duchin Group promptly removed again, this time on the basis that assignments made to defeat removal should be disregarded in determining diversity jurisdiction. *See* Pl. Remand Mem., Ex. A. On October 22, JMTR Enterprises and the Management Company filed a Verified First Amended Complaint ("the Verified Complaint") naming Mr. Mitchell and Mrs. Mitchell as additional plaintiffs. *See id.,* Ex. J.

## III. *Analysis*

### A. *The JMTR Group's Motion to Remand*

The JMTR Group asks this Court to remand the pending action to the Middlesex Superior Court on the basis that it was improperly removed. The JMTR Group asserts that at the time the Duchin Group removed the action to this Court, diversity of citizenship between the parties was not complete because JMTR Enterprises and the Management Company, like all three defendants, are citizens of Rhode Island. Because this Court lacks jurisdiction over the subject matter in the absence of complete diversity, *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), this matter is addressed at the outset.

### 1. Citizenship of the Management Company

The Management Company is a Rhode Island corporation with its principle place of business in Massachusetts. Under the diversity statute, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principle place of business . . . ." 28 U.S.C. § 1332(c)(1). Accordingly, the JMTR Group argues that the Management Company is a citizen of both Rhode Island and Massachusetts, and thus not diverse from the three defendants, all of whom are Rhode Island citizens. The Duchin Group contends that this Court should disregard the Management Company's citizenship in determining diversity because the Mitchell's assignment of claims to the Management Company was orchestrated to defeat federal jurisdiction.

■ "There are substantially more cases dealing with a plaintiff's attempt to manufacture diversity than to destroy it." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 110 (3d Cir.1990); *accord Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 597 (9th Cir.1996). Congress has spoken to the former issue: "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment of otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359 (1998). There is no parallel statutory authority regarding assignments made to defeat the jurisdiction of a district court. It is clear, however, that federal district courts "have both the authority and the responsibility, . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990); *accord Picquet v. Amoco Production Co.*, 513 F.Supp. 938, 943 (M.D.La.

1981); *Gentle v. Lamb–Weston, Inc.*, 302 F.Supp. 161, 162 (D.Me.1969).

■ Whether the assignment here was improperly or collusively made "is to be resolved as a simple question of fact." *Grassi*, 894 F.2d at 186. There is a "pattern" of facts that courts have found indicative of a plaintiff's impermissible attempt to destroy diversity through assignment. *See Attorneys Trust*, 93 F.3d at 599; *Grassi*, 894 F.2d at 186; *Picquet*, 513 F.Supp. at 943. The pattern includes, among other factors: (1) a partial, rather than total, assignment; (2) lack of consideration paid by the assignee to the assignor; (3) the plaintiff's motive was to stay in state court; (4) the assignee had no interest in the litigation before the assignment; and (5) the assignment was made shortly before the suit was filed. *See Grassi*, 894 F.2d at 186.

■ Each of these factors is present here. First, Mr. Mitchell, Mrs. Mitchell, and Somerset assigned twenty-five percent of their claims against the Duchin Group to the Management Company. *See* Ver. Comp. ¶ 25. Second, the Management Company paid no consideration for the assignment. Third, the Mitchells incorporated the Management Company on Friday, August 21, 1998, *see* Def.Mem.Opp. Remand, Ex. F; JMTR Enterprises and the Management Company filed a complaint in Middlesex Superior Court on Monday, August 24, *see id.*, Ex. A. Fourth, the Management Company certainly had no interest in the litigation before the assignment, since it did not exist.

Finally, there is overwhelming evidence that the JMTR Group desperately wants to litigate in state court. The Mitchells created JMTR Enterprises, a Rhode Island limited liability company, on July 22, 1998, *see id.*, Ex. B, just five days before JMTR Enterprises filed a complaint in the Middlesex Superior Court, *see id.*, Ex. C. The Duchin Group removed the action to federal court on August 19, 1998. *See id.*, Ex. D. On August 21, JMTR Enterprises voluntarily dismissed its complaint pursu-

ant to Federal Rule of Civil Procedure 41(a)(1). *See id.,* Ex. E. That same day, the Mitchells created the Management Company, a Rhode Island corporation. *See id.,* Ex. F. On August 24 (which was the next business day), JMTR Enterprises, along with the Management Company, filed a second complaint in Middlesex Superior Court. *See id.,* Ex. A.

"Under these circumstances, the assignment of this fractional interest should not have the effect of depriving [the Duchin Group], the noncitizen, of the federal forum which Congress has provided." *Picquet,* 513 F.Supp. at 943. In *Picquet,* the district court denied the plaintiffs' motion to remand because the plaintiffs had assigned a portion of their rights to a nondiverse entity created after the plaintiffs decided to bring suit against the defendants, the assignment was made shortly before the action was instituted, and the overriding motivation for the assignment appeared to be the avoidance of federal jurisdiction. *See id.* The JMTR Group's conduct is virtually identical to that of the *Picquet* plaintiffs.

Accordingly, this Court will not consider the citizenship of the Management Company in determining whether complete diversity exists between the parties. *See id.* "Were this Court to hold otherwise, it would be by acquiescence a party to the fraudulent avoidance of its jurisdiction and the substantial frustration of defendant's constitutional and statutory rights." *Gentle,* 302 F.Supp. at 166–67. This it declines to do.

### 2. *Citizenship of JMTR Enterprises*

JMTR Enterprises was organized in Rhode Island and has its principle place of business in Waltham, Massachusetts. *See* Def.Mem.Opp. Remand, Ex. B. The JMTR Group argues that pursuant to 28 U.S.C. § 1332(c)(1), JMTR Enterprises is a citizen of Rhode Island and Massachusetts, and, consequently, not diverse from the defendants.

■ Unlike the Management Company, however, JMTR Enterprises is a limited liability company, not a corporation. A limited liability company combines the limited liability of a corporation with the favorable tax treatment of a partnership. *See* R.I.Gen.L. §§ 7–16–18(a), 7–16–67(a)(2)(b)(ii). The determination of a limited liability company's citizenship for purposes of diversity jurisdiction is an issue of first impression in this Circuit. Other courts considering the question have held that a limited liability company is a citizen of the state or states of which its members are citizens. *See Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998); *U.S.A. Seafood, L.L.C. v. Koo,* 1998 WL 765160, at *1 (S.D.N.Y. Oct.30, 1998); *International Flavors and Textures, LLC v. Gardner,* 966 F.Supp. 552, 554 (W.D.Mich.1997).[2] A limited liability company is not a citizen of the state in which it was organized, unless one its members is a citizen of that state. *See International Flavors,* 966 F.Supp. at 554. This Court concurs with the reasoning set forth in those cases, and adopts their holding as its own.

In *Carden v. Arkoma Associates,* 494 U.S. 185, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), the Supreme Court held that a limited partnership is not a citizen of the state in which was organized,

---

**2.** At least one court has posited that a limited liability company is a citizen of the state in which it has its principle place of business. *See Carlos v. Adamany,* 1996 WL 210019, at *3 n. 4 (N.D.Ill. April 17, 1996). As this Court noted in *Reisman v. KPMG Peat Marwick L.L.P.,* 965 F.Supp. 165, 177 n. 17 (D.Mass.1997), this conclusion was dicta and unsupported by authority. Furthermore, the *Carlos* decision ignored the Supreme Court's decision in *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), discussed *infra. See Reisman,* 965 F.Supp. at 177 n. 17. In any event, because JMTR Enterprises' principle place of business is Massachusetts, application of the *Carlos* standard—which this Court today rejects— would not affect the jurisdictional question in this case.

but rather a citizen of the state or states of which its partners are citizens. As Chief Judge Posner noted in *Cosgrove*, a limited liability company "is like a limited partnership." *Cosgrove*, 150 F.3d at 731. Indeed, JMTR Enterprises' Articles of Organization—submitted on the official form of Rhode Island's Secretary of State—explains that "[t]he limited liability company has the purpose of engaging in any business which a limited partnership may carry on except the provision of professional services...." Def.Mem.Opp. Remand, Ex. B.

Moreover, there is no justification for treating a limited liability company like a corporation. The unique status of corporations as citizens of the state in which they were created hails from Congress. *See* 28 U.S.C. § 1332(c)(1). The Supreme Court has declined to extend this special rule to other entities. *See Carden*, 494 U.S. at 189, 110 S.Ct. 1015 (citing cases). Thus, unless and until Congress speaks as to the citizenship of limited liability companies, they are taken to be citizens of the state or states of which their members are citizens. *See id.* at 196, 110 S.Ct. 1015; *Cosgrove*, 150 F.3d at 731.

■ At present, JMTR Enterprises has three members: Mr. Mitchell, Mrs. Mitchell, and the Management Company. *See* Ver.Comp. ¶ 5. This Court will not consider the citizenship of the Management Company in determining whether complete diversity exists. *See* Part.III.A.1, *supra.* The Mitchells are citizens of Massachusetts. Consequently, JMTR Enterprises is a citizen of Massachusetts. All three defendants are citizens of Rhode Island. Diversity is thus complete.

Accordingly, the JMTR Group's motion to remand this action to the Middlesex Superior Court is hereby DENIED.

**B. *Mrs. Duchin's & Duchin Realty's Motion to Dismiss for Lack of Personal Jurisdiction***

The JMTR Group bears the burden of proving this Court's jurisdiction over the nonresident defendants. *See, e.g., Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 3, 389 N.E.2d 76 (1979).[3] To defeat the motion to dismiss, the JMTR Group must proffer facts sufficient to satisfy both the Massachusetts long-arm statute, *see* Mass.Gen.L. ch. 223A, § 3, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *see* U.S. Const. amend. XIV, § 1.

■ JMTR's showing must be based on evidence of specific facts set forth in the record; a "plaintiff must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979). A verified complaint functions as affirmative proof for purposes of this motion, to the extent that the facts contained therein are based on the plaintiff's personal knowledge. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir.1991) (considering a verified complaint tantamount to an affidavit for purposes of opposing a summary judgment motion);[4] *Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd.*, 936 F.Supp. 250, 255 n. 4 (E.D.Pa.1996) (considering plaintiff's verified complaint equivalent to an affidavit in opposition to the defendant's motion to dismiss for lack of personal jurisdiction). The record also includes an affidavit by Mr. Mitchell.

---

3. "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits." *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564, 568 (D.Mass.1976) (Tauro, J.) (citations and internal quotation marks omitted).

4. In evaluating whether a plaintiff has proffered sufficient evidence to support a determination of personal jurisdiction, the Court acts "in a manner reminiscent of its role when a motion for summary judgment is on the table...." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir.1995).

### 1. *Jurisdiction Over Mrs. Duchin*

Under the Massachusetts long-arm statute:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; ...

Mass.Gen.L. ch. 223A, § 3. The JMTR Group predicates this Court's jurisdiction over Mrs. Duchin on sections (a), (b), and (c) of the long-arm statute.

### (a) *Mass.Gen.L. ch. 223A, § 3(a)*

The JMTR Group asserts that Mrs. Duchin has transacted business in Massachusetts because (1) Gottesman, acting as her agent, solicited business with Somerset, a Massachusetts company, and the Mitchells, Massachusetts residents, *see* Ver.Comp. ¶ 46; (2) Mrs. Duchin sent numerous communications via telephone, mail, electronic mail, and facsimile to the JMTR Group in Massachusetts, *see id.* at ¶ 47; and (3) Mrs. Duchin's lawyer and close personal advisor, Richard W. Zacks ("Zacks"), met with members of the JMTR Group on June 19, 1998 in Boston to discuss, among other issues, the details of Mrs. Duchin's consulting agreement with the buyer, *see* Mr. Mitchell Aff. at ¶¶ 3–6, 8.

The courts of Massachusetts construe Mass.Gen.L. ch. 223A, § 3(a) broadly. *See, e.g., Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 982 (1st Cir.1986). The JMTR Group cannot, however, premise jurisdiction over Mrs. Duchin on Gottesman's solicitation of Somerset and the Mitchells because it has not proffered factual support for its contention that Gottes-

man was acting as Mrs. Duchin's agent. *See Salvador v. Meese,* 641 F.Supp. 1409, 1413 (D.Mass.1986) (Garrity, J.). Gottesman's authority to conduct business on behalf of Mrs. Duchin is not a matter within the personal knowledge of the JMTR Group.[5] Thus, the JMTR Group must submit evidence beyond the Verified Complaint to support a finding of agency for the purpose of determining jurisdiction. *See Sheinkopf,* 927 F.2d at 1262. Because the JMTR Group has presented no evidence that Gottesman was Mrs. Duchin's agent other than its Verified Complaint, the JMTR Group cannot predicate this Court's personal jurisdiction over Mrs. Duchin on Gottesman's actions. *See id.*

This Court may, however, exercise its jurisdiction over Mrs. Duchin on account of the communications she sent to the JMTR Group, either directly or through an agent, via telephone, mail, electronic mail, and facsimile. *See Ealing,* 790 F.2d at 983. According to the Verified Complaint, all three defendants sent more than 100 communications to the JMTR Group in Massachusetts. *See* Ver.Comp. ¶ 47. The record contains several letters from Richard J. Land ("Land"), an attorney from Zacks' law firm, to Mr. Mitchell and JMTR Enterprises. *See* Pl. Reply Mem. Remand, Exs. 1–4.[6] One of those letters refers specifically to Mrs. Duchin in her personal capacity, *see id.* at Ex. 2, and the others involve the terms of the agreement between Somerset and the Duchin Group. In addition, the Verified Complaint discloses two telephone calls from Zacks, acting on behalf of Mrs. Duchin, to Mr. Mitchell, during which they discussed the terms of the purchase of Duchin Inc. *See* Ver.Comp. ¶¶ 94, 103.

The First Circuit has held that a foreign defendant's sending of a single telex to a

---

**5.** "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1957).

**6.** Under basic principles of agency, the contacts of an out-of-state defendant's attorney with the forum state are attributable to the defendant. *See Sawtelle v. Farrell,* 70 F.3d 1381, 1389 n. 4 (1st Cir.1995).

plaintiff in Massachusetts fulfills the "transacting business" requirement. *See Ealing*, 790 F.2d at 983; *see also Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 932 (1st Cir.1985) (holding that mailing four letters and making one telephone call to Massachusetts fulfilled section 3[a]); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193–195 (1st Cir.1980) (ruling that mailing two letters charging patent infringement and threatening litigation satisfied section 3[a]). Thus, Mrs. Duchin's conduct literally fulfills section 3(a). Moreover, contrary to her contention, section 3(a) does not require that the business be transacted within the physical bounds of Massachusetts. *See Bond Leather*, 764 F.2d at 932. The fact that "Mrs. Duchin never set foot in Massachusetts in connection with the proposed transaction," Def. Dismissal Mem. at 5, does not prevent this Court from exercising jurisdiction over Mrs. Duchin.

Zacks' trip to Massachusetts further supports this Court's jurisdiction over Mrs. Duchin under section 3(a). According to Mr. Mitchell's affidavit, Zacks, acting as an agent for all three defendants, met with Mr. Mitchell, Mrs. Mitchell, and an attorney, Marc Lazar ("Lazar"), for seven hours on June 19, 1998 at the law offices of Gadsby & Hannah in Boston. *See* Mr. Mitchell Aff. ¶¶ 3, 4, 5. Zacks told Mr. Mitchell that he was acting as the authorized agent and representative of all three defendants, including Mrs. Duchin. *See id.* at ¶ 6.[7] The Duchin Group does not dispute that Zacks met with the JMTR Group in Boston, or that Zacks has been the attorney and close personal advisor to the Duchin Group for over ten years. A one-day business meeting in Massachusetts is sufficient to confer personal jurisdiction. *See Salvador*, 641 F.Supp. at 1415. This Court attributes Zacks' attendance at the meeting to Mrs. Duchin, *see*

*Sawtelle*, 70 F.3d at 1389 n. 4., and holds that she has transacted business in the commonwealth within the meaning of section 3(a).

The fact that Mrs. Duchin transacted business in Massachusetts does not end this Court's analysis. Section 3(a) limits a court's jurisdiction over a foreign defendant to situations in which there is "a cause of action in law or equity *arising from*" the defendant's transaction of business with the commonwealth. Mass. Gen.L. ch. 223A, § 3(a) (emphasis added); *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir.1997). That is, in order for this Court to exercise personal jurisdiction over Mrs. Duchin under section 3(a), the JMTR Group's asserted causes of action must arise from Mrs. Duchin's transaction of business in Massachusetts.

The "arising from" language is to be generously construed in favor of asserting personal jurisdiction. *See Lyle Richards*, 132 F.3d at 114. In a breach of contract case, the "arising from" requirement "has been satisfied when ... the business transacted [in Massachusetts] was instrumental in the formation of the contract." *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir.1983).

Nearly every contact Mrs. Duchin had with Massachusetts was instrumental to the formation of the Term Sheet. The phone calls from Zacks to Mr. Mitchell in June of 1998 involved the terms of the agreement, and, in particular, the closing date, which is a key element of the JMTR Group's allegations of breach. *See* Ver. Comp. ¶¶ 94, 103. The letters from Land to Mr. Mitchell and JMTR Enterprises involve the terms of the purchase. *See* Pl. Reply Mem. Remand, Exs. 1–4. In fact, the Verified Complaint alleges that all of the 100–plus communications the Duchin

---

**7.** Although this statement, alone, is not sufficient to establish Zacks' authority as Mrs. Duchin's agent, *see* Fed.R.Evid. 801(d)(2), the JMTR Group has also submitted a letter from Zacks to Rosenbaum indicating that Zacks

acted as Mrs. Duchin's agent. *See* Pl.Mem. Opp. Dismissal, Ex. I. In addition, Mrs. Duchin does not dispute that Zacks has been her long-time attorney and close personal adviser.

Group, including Mrs. Duchin, sent to the JMTR Group related to the terms of the acquisition of Duchin Inc. *See* Ver.Comp. at ¶ 47. Zacks' meeting with the Mitchells and Lazar in Boston involved, among other issues, Mrs. Duchin's consulting agreement, *see* Mr. Mitchell Aff. ¶ 8, an important component of the Term Sheet, *see* Pl.Mem.Opp. Dismissal, Ex. B. Accordingly, this Court concludes that the JMTR Group's claim for breach of contract and related causes of action arise from Mrs. Duchin's transactions of business in Massachusetts. *See Boudreau v. Scitex Corp., Ltd.*, 1992 WL 159667, at *2 (D.Mass. June 25, 1992) (holding that the "arising from" requirement of section 3[a] was satisfied when the Massachusetts plaintiff and foreign defendant conducted contract negotiations through electronic mail, facsimile, and telephone calls).

(b) *Mass.Gen.L. ch. 223A, § 3(c)*

■ Under this provision, a court has personal jurisdiction over a foreign defendant when a plaintiff's cause of action arises from the defendant's "causing tortious injury by an act or omission in this commonwealth." Mass.Gen.L. ch. 223A, § 3(c). Specifically, the JMTR Group alleges that Zacks, acting on behalf of Mrs. Duchin, called the Mitchells in Massachusetts on June 12, 1998, to discuss the terms of the agreement. *See* Ver.Comp. ¶ 103. During that call, the parties agreed to several terms, including a provision that the Duchin Group would not require any member of the JMTR Group to provide an earnest money deposit. *See id.* at ¶ 106(f) & (g). The JMTR Group contends that Mrs. Duchin did not intend to honor this agreement, but actually intended to demand an earnest money deposit of one million dollars. *See id.* at ¶ 107. The

JMTR Group asserts that it detrimentally relied on this misrepresentation. *See id.* at 108.

Mrs. Duchin does not dispute these allegations. Rather, she argues there is no jurisdiction under section 3(c) because none of the JMTR Group's causes of action sound in tort. This argument fails, however, because Count Four of the Verified Complaint asserts a claim for fraud, misrepresentation, and deceit, *see* Ver.Comp. ¶¶ 180–85, which sounds in tort, *see* 2 J.D. Lee & Barry A. Lindahl, *Modern Tort Law* § 27.27, at 584 (rev. ed.1988). In addition, Count Two of the Verified Complaint states a cause of action under Mass. Gen.L. ch. 93A, § 11. *See* Ver.Comp. ¶¶ 169–75. The First Circuit has "assume[d], without deciding, that a Chapter 93A violation would constitute a 'tortious injury' under chapter 223A." *See Lyle Richards*, 132 F.3d at 114.[8]

A fraudulent misrepresentation made in the state by a foreign defendant or her agent via mail, telephone, or other means of communication constitutes an act that confers jurisdiction under section 3(c). *See, e.g., Ealing*, 790 F.2d at 982. Thus, the JMTR Group's allegations fulfill the literal requirement of section 3(c). Furthermore, the fraud and chapter 93A claims arise from the tortious injury alleged. In fact, the fraud claim is based exclusively on the alleged tort—the conversation in which Zacks assured the Mitchells that the Duchin Group would not require an earnest money deposit. *See* Ver.Comp. ¶¶ 180–85. Accordingly, the JMTR Group has met the requirements for long-arm jurisdiction over Mrs. Duchin under section 3(c) with respect to Counts Two (chapter 93A) and Four (fraud).[9]

8. Were this not the case, this Court could, in its discretion, exercise jurisdiction over Mrs. Duchin with respect to the chapter 93A claim if the JMTR Group meets the long-arm requirements for at least one other asserted claim. *See Cadle Co. v. McKernan*, 207 B.R. 971, 979 (D.Mass.1997) (Keeton, J.).

9. Because this Court holds that it may exercise personal jurisdiction over Mrs. Duchin as to all of the JMTR Group's claims under sections 3(a) and 3(c) of the long-arm statute, the Court need not address the JMTR Group's argument that section 3(b) also permits jurisdiction over Mrs. Duchin.

(c) *Due Process*

Literal satisfaction of the long-arm statute does not, however, compel this Court to exercise jurisdiction over Mrs. Duchin. This Court must also consider whether subjecting Mrs. Duchin to litigation in Massachusetts offends the Fourteenth Amendment's requirement of fundamental fairness. *See Sawtelle,* 70 F.3d at 1388. The fairness requirement is met when certain "minimum contacts" exist between the foreign defendant and the forum state. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Less is required to support jurisdiction when, as in this case, the cause of action arises from the defendant's contacts with the forum than when it does not. *See id.* at 317, 66 S.Ct. 154; *Hahn,* 698 F.2d at 51.

■ The First Circuit employs a three-part test to determine whether sufficient contacts exist to exercise jurisdiction over a foreign defendant based on the long-arm statute. *See Sawtelle,* 70 F.3d at 1388–89. First, the plaintiff's claim must directly arise out of, or relate to, the defendant's activities in Massachusetts. *See United Elec., Radio & Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992). "Relatively speaking, the relatedness test is a flexible, relaxed standard, as suggested by the disjunctive nature of the requirement." *Sawtelle,* 70 F.3d at 1389 (citations and internal quotation marks omitted). As noted above, both the contract and tort claims against Mrs. Duchin arise from Mrs. Duchin's specific contacts with Massachusetts.

■ Second, the defendant's activities in Massachusetts must evince a "purposeful availment of the privilege of conducting activities" in Massachusetts, thereby invoking the benefits and protections of Massachusetts' laws and making the defendant's involuntary presence before this state's courts foreseeable. *Id.* The First Circuit has held that sending a fraudulent misrepresentation into Massachusetts fulfills the "purposeful availment" requirement. *See Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir.1972). Moreover, there is no constitutional problem in basing jurisdiction upon a single, isolated tort committed by a foreign defendant in Massachusetts against a Massachusetts resident. *See Ealing,* 790 F.2d at 983. Nor is there any due process barrier to jurisdiction under section 3(a). The numerous communications Mrs. Duchin sent to Massachusetts, as well as Zacks' meeting in Massachusetts, fulfill the *International Shoe* standard. *See id.* at 983–84.

Third, and finally, the exercise of jurisdiction over the foreign defendant must be reasonable "in light of the Gestalt factors." *163 Pleasant Street,* 960 F.2d at 1089. Mrs. Duchin signed a Term Sheet, in her individual capacity, regarding the acquisition of her company by a Massachusetts company. *See* Pl.Mem.Opp. Dismissal, Ex. B. She agreed to supply consulting services for two years to Somerset, which is a Massachusetts company. *See id.* She sent communications to the Mitchells in Massachusetts, and her attorney met with the Mitchells in Boston. In light of these factors, it is reasonable for this Court to exercise personal jurisdiction over Mrs. Duchin.

Accordingly, Mrs. Duchin's motion to dismiss for lack of personal jurisdiction is hereby DENIED.

2. *Jurisdiction Over Duchin Realty*

■ The JMTR Group asserts personal jurisdiction over Duchin Realty under sections 3(a) and 3(c) of the long-arm statute because (1) Gottesman solicited business with a Massachusetts company and two Massachusetts residents, (2) Duchin Realty sent numerous communications to Somerset and the Mitchells in Massachusetts, (3) Zacks met with the Mitchells and Lazar in Boston on June 18, 1998; and (4) Duchin Realty intentionally sent false statements to the Mitchells in Massachusetts. For the reasons explained

above in reference to Mrs. Duchin, *see* Part III.B.1(a), *supra*, the JMTR Group cannot predicate jurisdiction on the basis of actions taken by Gottesman because there is no evidence that Gottesman acted as Duchin Realty's agent. Regardless, the JMTR Group does literally satisfy the requirements of sections 3(a) and 3(c) for the same reasons discussed with respect to Mrs. Duchin. *See* Part III.B.1(a) & (c), *supra; see* also Mr. Mitchell Aff. ¶ 7 (describing business relevant to Duchin Realty that Zacks and the Mitchells discussed in Boston on June 18, 1998).

■ Furthermore, the exercise of personal jurisdiction over Duchin Realty is permissible under the Due Process Clause. Duchin Realty's contacts with the forum state are identical to Mrs. Duchin's contacts. The JMTR Group asserts the same causes of action against Duchin Realty and Mrs. Duchin. In addition, the Term Sheet includes a provision under which Duchin Realty would, for ten years, lease property to Duchin Inc.'s buyer, which was to be a limited partnership or limited liability company with a general partner owned and controlled by Somerset, a Massachusetts corporation. *See* Pl.Mem.Opp. Dismissal, Ex. B. Thus, for the reasons discussed with regard to Mrs. Duchin, this Court's exercise of jurisdiction over Duchin Realty does not offend the Due Process Clause of the Fourteenth Amendment. *See* Part III. B.1(c), *supra.*

Accordingly, Duchin Realty's motion to dismiss for lack of personal jurisdiction is hereby DENIED.

### C. The Duchin Group's Motion to Dismiss for Improper Venue

The Duchin Group argues that venue in the District of Massachusetts is improper under 28 U.S.C. § 1391(a)(2) and asks this Court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3), or, alternatively, to transfer the action to the district of Rhode Island pursuant to 28 U.S.C. § 1404.

### 1. Improper Venue

■ As the JMTR Group properly notes, 28 U.S.C. § 1391 has no application to this case because it is a removed action. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). The venue of a removed action is governed by 28 U.S.C. § 1441(a), *see id.,* which provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (1998). Moreover, "removal of an action to a proper forum under § 1441(a) frequently has been considered a waiver or cure of any defect in the original venue of the removed action...." *Lambert v. Kysar,* 983 F.2d 1110, 1113 n. 2 (1st Cir.1993); *accord Polizzi,* 345 U.S. at 665, 73 S.Ct. 900.

The Duchin Group removed this action from the Middlesex Superior Court. The District of Massachusetts is the proper venue for an action removed from Middlesex Superior Court. *See* 28 U.S.C. § 1441(a). Thus, the Duchin Group cannot now argue that venue in the District of Massachusetts is improper. *See Lambert,* 983 F.2d at 1113 n. 2. Accordingly, the Duchin Group's motion to dismiss for improper venue is hereby DENIED.

### 2. Transfer of Venue

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1998). The burden of proof upon a motion to transfer venue rests with the party seeking transfer. *See Coady v. Ashcraft & Gerel,* 996 F.Supp. 95, 100 (D.Mass.1998). There is a strong presumption in favor of the plaintiff's choice of forum. *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 719 (1st Cir. 1996); *Coady,* 996 F.Supp. at 100.

■ In considering a motion to transfer venue, "[p]aramount among the

factors considered in the interests of justice analysis is trial efficiency." *Coady,* 996 F.Supp. at 101. This Court has held that "in terms of communications, logistics, and trial preparation, the differences between Boston and Washington [D.C.] are negligible and cannot weigh heavily in the balance." *Id.* Surely the differences between Boston and Providence—located just over fifty miles apart—are even less significant. Moreover, any increase in convenience to the Duchin Group by transfer to Providence would be offset by a decrease in convenience to the JMTR Group. *See id.* at 101 n. 7.

The fact that many of the witnesses reside in Rhode Island is likewise not sufficient to carry the Duchin Group's burden. Rather, "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Id.* (quoting Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 15 *Federal Practice and Procedure* § 3851 at 425 [2d ed.1986]). The Duchin group has made no such showing. Neither has the Duchin Group suggested that important documents are located in Rhode Island. *See Coady,* 996 F.Supp. at 101 n. 7. Thus, despite the fact that some of the relevant conduct took place in Rhode Island, the totality of the circumstances is such that transfer to the District of Rhode Island is not warranted. *See id.*

Accordingly, the Duchin Group's motion to transfer this action to the District of Rhode Island is hereby DENIED.

### D. *The JMTR Group's Motion for an Award of Attorneys' Fees*

The JMTR Group has filed a motion for an award of attorneys' fees and costs incurred as a result of the Duchin Group's allegedly wrongful removal. Because this Court holds that this case was not wrongfully removed, the JMTR Group's motion for attorneys' fees and costs is hereby DENIED.

## IV. *Conclusion*

For the foregoing reasons, this Court DENIES the JMTR Group's motion to remand this action to state court, DENIES the Duchin Group's motion to dismiss for improper venue, DENIES Mrs. Duchin's and Duchin Realty's motion to dismiss for lack of personal jurisdiction, and DENIES the JMTR Group's motion for attorneys fees.