BOSTON SCIENTIFIC CORP.
and BOSTON SCIENTIFIC
SCIMED, INC., Plaintiffs,

v.

Dr. Tassilo BONZEL, Defendant.

No. CIV.A. 00–11798–WGY.

United States District Court,
D. Massachusetts.

Feb. 20, 2001.

Steven M. Bauer, Maureen A. Bresnahan, Kurt W. Lockwood, Testa, Hurwitz & Thibeault, Boston, MA, Martin F. Cunniff, Mark D. Wegener, Matthew M. Wolf, Howrey & Simon, Washington, DC, for plaintiff.

William T. Bogaert, Morrison, Mahoney & Miller, Boston, MA, Thomas J. Burger, Wood, Herron & Evans, P.L.L., Cincinnati, OH, James F. Roegge, Jeffrey M. Thompson, Meagher & Geer, P.L.L.P., Minneapolis, MN, for defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

The plaintiffs, Boston Scientific Corporation ("Scientific") and Boston Scientific Scimed, Inc. ("Scimed"), seek declaratory and injunctive relief against the defendant, Dr. Tassilo Bonzel ("Bonzel"). Under Count I, Scientific and Scimed seek a declaratory judgment that they have not breached a license agreement or, alternatively, that Bonzel ought be estopped from asserting patent infringement claims against them. They further seek an order enjoining Bonzel from terminating the license agreement. Under Count II, Scientific and Scimed bring an action for conversion against Bonzel in connection with a bond posted by SciMed Life Systems ("Life"), a subsidiary of Scientific, in the course of a patent-related lawsuit in Germany. Bonzel has moved to dismiss or stay the plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (6), and (7) for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and failure to join an indispensable party, respectively. Alternatively, Bonzel seeks summary judgment or partial summary judgment.

## II. FACTUAL BACKGROUND

Bonzel is a cardiologist who lives and works in Germany. Def.'s Decl. ¶ 1. He owns no real property in Massachusetts. *Id.* ¶ 2. He holds no bank accounts in Massachusetts and has entered into no agreement or contract with any business entity or individual relating to business in Massachusetts. *Id.* He has visited Massachusetts on vacation on various occasions, but not within the last four years. *Id.* In 1993, Bonzel negotiated with a Massachusetts company for a possible license in relation to another invention, but those negotiations fell through. *Id.* In 1978, he attended the University of Massachusetts as a guest. *Id.* In 1996, he was named as a counterclaim defendant in another lawsuit but was dismissed from that lawsuit for lack of personal jurisdiction. *Id.*

In 1984, Bonzel invented a rapid exchange catheter known as the "monorail" catheter, now widely used for angioplasty procedures during cardiovascular surgery. *Id.* ¶ 1. He obtained patents for his invention in both Germany and the United States. In 1986, Bonzel licensed his invention to Schneider Medintag AG, a Swiss corporation which later changed its name to Schneider AG. *Id.* ¶ 3. Under the license, Bonzel transferred various exclusive rights in the patent in exchange for payments. Specifically, he transferred the right to sue for infringement of the patent. *Id.* ¶ 4. This license has been amended several times. The latest version is known as "Agreement(V)." *Id.* Ex. A.

Schneider AG shared the license with its sister company, Schneider (U.S.A.), based in Minnesota. Both Schneider AG and

Schneider (U.S.A.) are controlled by Pfizer, Inc. ("Pfizer"). In 1997, Pfizer dissolved Schneider AG, created Schneider GmbH, and moved Agreement(V) to the new company. Def.'s Mem. at 1. In March 1998, Bonzel began receiving royalty payments from Switzerland from Schneider GmbH instead of Schneider AG. Def.'s Decl. ¶ 7.

Pfizer has exercised its right to file suit in the United States against infringers of the Bonzel patent on several occasions. Patent infringement suits have been brought against Scientific and Life. *Id.* ¶ 4. Bonzel himself, however, has not brought any patent infringement suits in the United States involving enforcement of his licensed U.S. patent rights. *Id.* From 1994 to 1998, Pfizer and Scientific were locked in three patent-related lawsuits through their subsidiaries, one filed by Scientific in Massachusetts, another filed by Pfizer in Minneapolis, and a third filed by Life in Germany ("the German litigation") concerning the validity of Bonzel's German patent. Def.'s Mem. at 2. In the German litigation, the German court required a cost bond from Life to cover Pfizer's legal costs in the event that Life lost the lawsuit. *Id.*

In September 1998, Scientific purchased the "Schneider Worldwide" division of Pfizer, which included Schneider GmbH and Schneider (U.S.A.). Compl. ¶ 13. Scientific is a Massachusetts-based corporation. Knopf Aff. ¶ 4. Schneider (U.S.A.) was subsequently renamed Boston Scientific Scimed, Inc. In the latter half of 1999, Scientific commenced paying royalty payments to Bonzel pursuant to Agreement(V) from Natick, Massachusetts. Def.'s Decl. ¶ 8.

On July 27, 2000, Bonzel sent a default notice to Schneider AG alleging various breaches of Agreement(V) and indicating that "failure to cure within ninety days will result in ... termination of Agreement(V)." Pls.' Mem. Ex. 1. On July 28, 2000, Bonzel filed suit in Minnesota state court ("the Minnesota action"). Thompson Aff. ¶ 1. Named in that suit are Scientific, Schneider GmbH, Schneider AG, Scimed, Pfizer, and Pfizer R & D Ireland. In the Minnesota action, Bonzel seeks, *inter alia,* a declaration that Pfizer has breached Agreement(V), a declaration that he has a right to terminate Agreement(V), and compensatory damages. *Id.* Ex. 1. In summary, the Minnesota action concerns whether Pfizer, by dissolving Schneider AG, transferring Agreement(V) to Schneider GmbH, and transferring the stock of Schneider GmbH to various other entities, including Scientific, was able to deprive Bonzel of his share of the value of his patent rights relating to the invention. There is no allegation of patent infringement by Bonzel in the Minnesota action. The Minnesota state court ordered the matter to trial. Pfizer, however, removed the Minnesota action to the United States District Court for the District of Minnesota. Bonzel then moved to remand the matter to state court on the ground that the federal court lacked subject matter jurisdiction. That motion was due to be heard on December 1, 2000. The action before this Court was filed on September 5, 2000.

## III. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

In considering a motion to dismiss for lack of subject matter jurisdiction, this Court must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs. *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998). Because the federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed. The plaintiffs carry the burden of establishing the existence of federal jurisdiction. *Id.*

#### 1. Relating to Patents

This Court has "original jurisdiction of any civil action arising under any Act of Congress *relating to patents* ...."

28 U.S.C. § 1338(a) (emphasis added). Bonzel argues that this action for a declaration of noninfringement does not "aris[e] under" the federal patent laws and that, consequently, this Court lacks subject matter jurisdiction. Thus, the key issue presented here is whether this action "relat[es]" to a patent. Count II is a tort claim for conversion, a state common law action. Under Count I, however, Scientific and Scimed seek to estop Bonzel from asserting patent infringement claims against them.

Bonzel argues that, by claiming a reasonable apprehension of an action for patent infringement, Scientific and Scimed are attempting to transform what is, in essence, a contract dispute into a federal question. In particular, Bonzel argues that this assertion of noninfringement is merely a defense to his Minnesota contract action.

Scientific and Scimed counter that an action seeking a declaration of noninfringement has been held to arise under patent law. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 943 (Fed.Cir.1993) (citing *Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859, 862–63 [Fed. Cir.1987]).

"[T]he mere presence of patent issues is not a sufficient basis for patent jurisdiction," however. *Prize Frize, Inc. v. Matrix (U.S.), Inc.,* 167 F.3d 1261, 1264 (9th Cir.1999). It is well settled that a case cannot "arise under" federal law where the claim is merely a defense to a state court action. *Pub. Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction .... " *Pub. Serv. Comm'n,* 344 U.S. at 248, 73 S.Ct. 236. A suit by a patent licensee seeking a declaratory judg-

ment as to the validity of certain patents and their possible infringement by the licensee's manufacture and sale of a somewhat different product has been held not to arise under the patent laws, and thus not to raise a federal question, since the action merely sought to establish a defense to a breach of contract suit charging the patent licensee with breach of contract to pay agreed sum for the licensed use of the patents. *Thiokol Chem. Corp. v. Burlington Indus., Inc.,* 448 F.2d 1328, 1330–31 (3d Cir.1971). Likewise, in *Cordis,* which involved the question whether subject matter jurisdiction under the patent laws existed in a declaratory judgment action involving a license agreement, the Court of Appeals for the Federal Circuit stated that "[i]t is clear that a case is not within our 'arising under' jurisdiction if the assertion of noninfringement is merely a defense to a state contract action brought by a licensor to enforce a license agreement." *Cordis Corp.,* 835 F.2d at 862.

Courts will, therefore, look beyond the pleading to determine whether the patent laws are actually implicated. Thus, jurisdiction under section 1338(a) extends only to "those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). It is significant that, in this case, Bonzel makes no suggestion that Scientific and Scimed are currently infringing his United States patent rights. Further, there is no dispute as to the validity of the licensed Bonzel patent rights. In essence, the issue here is whether Scientific and Scimed, or others, have paid all the monies owed to Bonzel under Agreement(V). This claim cannot be said to arise under federal patent law.

### 2. Diversity

This conclusion, however, does not end the subject matter jurisdiction analysis. In this case, Bonzel lives and works in Germany. Scientific is a Massachusetts corporation and Scimed is a Minnesota corporation. The amount in controversy exceeds $75,000. Compl. ¶ 7. Consequently, diversity jurisdiction exists and this Court has subject matter jurisdiction. 28 U.S.C. § 1332(a)(2).

### B. *Personal Jurisdiction*

To establish that Bonzel is subject to personal jurisdiction, Scientific and Scimed must prove that Bonzel has "certain minimum contacts [with the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). On a motion to dismiss for want of *in personam* jurisdiction, the plaintiff bears the burden of persuading this Court that jurisdiction exists. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998). Plaintiffs may establish either general or specific jurisdiction. *Id.* General jurisdiction exists when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Id.* (internal quotation marks omitted). Specific jurisdiction exists when "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Id.* In either case, this Court must find that Bonzel "purposefully avail[ed himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). On the present facts, Scientific and Scimed are unable to establish that Bonzel has engaged in continuous and systematic activity in Massachusetts unrelated to the suit such that general jurisdiction exists. Consequently, this Court's power depends on Scientific and Scimed being able to establish specific jurisdiction under the Massachusetts long-arm statute.

### 1. The Massachusetts Long–Arm Statute

Under the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, this Court may exercise personal jurisdiction if the plaintiffs' cause of action arises out of Bonzel's transacting business or contracting to supply goods or services, in Massachusetts. *Id.* at §§ 3(a), (b).

Bonzel did not contract to supply goods or services in Massachusetts. Moreover, the claims of Scientific and Scimed do not arise out of business conducted by Bonzel in Massachusetts. Bonzel initially entered into a license agreement with Schneider AG, a Swiss corporation, in Europe. In 1997, Pfizer transferred the assets of Schneider AG to Schneider GmbH and then subsequently sold Schneider GmbH to Scientific. Bonzel, however, had no control over those transactions. Until late 1999, Bonzel had received all payments relating to Agreement(V) from a Swiss bank. In late 1999, Scientific unilaterally commenced making payments directly from Massachusetts.

Bonzel cites *Helicopteros Nacionales de Colombia,* S.A. v. *Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), for the proposition that:

> Absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."

*Id.* at 416–17, 104 S.Ct. 1868 (footnote omitted). Bonzel's reliance on *Helicopte-*

*ros,* however, appears misplaced. *Helicopteros* involved an analysis of *general,* not *specific,* jurisdiction, the jurisdictional basis potentially applicable here. Further, in *Helicopteros,* it was conceded that the claims did not arise out of or relate to the contacts. Rather, the question before the Supreme Court was whether the contacts constituted continuous and systematic general business contacts. *Id.* at 415–16, 104 S.Ct. 1868. Nevertheless, this Court agrees with Bonzel that merely receiving money is not sufficient to support personal jurisdiction.

Scientific and Scimed argue that their cause of action relates to, or arises out of, payments received by Bonzel and that he is thus subject to personal jurisdiction in Massachusetts based on his licensing relationship with Scientific. From January 1, 1999 through the second quarter of 2000, Bonzel received more than $3,800,000 in royalties from Scientific. Further, from Scientific's acquisition of Schneider GmbH until the initiation of litigation, these parties engaged in various communications concerning the licensing relationship. In particular, Scientific and Scimed rely on Bonzel's letter dated July 27, 2000, titled "Default Notice."

The First Circuit has held that "[t]he mailing of a letter charging patent infringement and threatening litigation is clearly a 'purposeful' act by the defendant," *Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 195 (1st Cir.1980), and this Court has held that the sending of a letter threatening infringement litigation to a Massachusetts company constitutes the transaction of business for the purposes of the long-arm statute, *GSI Lumonics, Inc. v. BioDiscovery, Inc.,* 112 F.Supp.2d 99, 109 (D.Mass.2000).

Bonzel's letter dated July 27, 2000, however, was addressed to Schneider AG in Switzerland. Only a courtesy copy was sent to Scientific's in-house counsel. *See* Pls.' Mem. Ex. 1. Further, the letter did not, in fact, threaten an infringement action. Bonzel titled his letter "Default No-

tice," detailed therein various alleged breaches of Agreement(V), and indicated that "[f]ailure to cure within ninety days will result in ... termination of Agreement(V)." *Id.* In addition, this Court has specifically indicated that, although a letter threatening an infringement action can help support jurisdiction, "[t]here is significant doubt that a threatening letter alone can satisfy 'notions of fair play and substantial justice.' " *GSI Lumonics,* 112 F.Supp.2d at 110. Contacts with Massachusetts other than the threatening letter must be established. *Id.*

Scientific and Scimed also argue that Scientific ships all the devices and systems at issue out of its warehouse in Quincy, Massachusetts and sells them through its national sales organization directed out of Natick, Massachusetts. Scientific and Scimed thus argue that the sale and distribution of products out of Massachusetts is relevant because it establishes that this forum is the focal point of the licensing relationship between Bonzel and Scientific. *See* Pls.' Surreply at 8. It is doubtful, however, that the sales activities of a licensee in the forum can operate to create jurisdiction over the licensor. As the licensor, Bonzel exercised no control over the distribution or marketing in Massachusetts of devices utilizing his patent. Indeed, in dismissing counterclaims against Bonzel for lack of personal jurisdiction in another lawsuit, the United States District Court for the Northern District of California held that the forum activities of a licensee cannot support the assertion of jurisdiction over a non-resident patentee, even if the patentee receives royalty payments. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* No. C–95–3577 DLJ, 1996 WL 467293, at *7 (N.D.Cal. July 24, 1996). However, in the present case, Scientific is naught but the new parent company of the original licensee.

■ Even if the long-arm statute were satisfied, which it is not, Scientific and Scimed must also meet the Due Process requirements of the Constitution. *Cognex*

*Corp. v. Lemelson Med., Educ. & Research Found., Ltd. Partnership*, 67 F.Supp.2d 5, 7 (D.Mass.1999) (Gorton, J.). The Due Process clause requires the exercise of personal jurisdiction to comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). In assessing the constitutional restraints, this Court must apply a tripartite analysis: (1) the claim(s) underlying the litigation must arise out of, or relate to, the defendant's forum-state activities; (2) the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable; and (3) the exercise of jurisdiction must be reasonable. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.1999); *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712–13 (1st Cir.1996).

The relatedness prong has been characterized as a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). Theoretically, it is possible for a plaintiff to establish that the relatedness prong has been satisfied even though the claim does not arise out of a defendant's transaction of business within the forum state.

■ Although Scientific and Scimed may be able to satisfy the relatedness prong, the purposeful availment prong appears more problematic. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." *Nowak*, 94 F.3d at 716. The two focal points of the purposeful availment prong are voluntariness and foreseeability. *Id.* "The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or third party." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528

[1985] ). In addition, "[t]he defendant's contacts must be such that he should reasonably anticipate being haled into court there." *Id.* In this case, Scientific's decisions to buy Schneider GmbH's stock and make royalty payments out of Massachusetts were unilateral acts; Bonzel could not foresee and did not initiate these contacts with Massachusetts. The purposeful availment prong is not satisfied on the present facts.

In addition, Scientific and Scimed must still establish that the exercise of jurisdiction over Bonzel would be reasonable. They are unable to do so. First, Bonzel has already subjected himself to jurisdiction in the Minnesota action. Scientific and Scimed are parties to that action and presumably can attempt to obtain full relief in that action. Second, Scimed is a Minnesota corporation. Third, the judicial system's interest in obtaining the most efficient resolution of the controversy favors dismissing this action in favor of the more comprehensive Minnesota action.

Bonzel is not subject to specific personal jurisdiction in Massachusetts. The long-arm statute is not satisfied here. In particular, the claims of Scientific and Scimed cannot be said to arise out of Bonzel's transacting business within Massachusetts. Even if the long-arm statute were satisfied, Scientific and Scimed do not meet the purposeful availment and reasonableness prongs of the Constitutional test.

2. Federal Rule of Civil Procedure 4(k)(2)

In certain circumstances, a federal court can obtain personal jurisdiction over a defendant under Federal Rule of Civil Procedure 4(k)(2). To establish jurisdiction under Rule 4(k)(2), however, the plaintiff's claim must arise under federal law, the federal court's exercise of jurisdiction must not offend the Constitution, and the defendant must be beyond the reach of any state court of general jurisdiction. *Swiss Am. Bank*, 191 F.3d at 38. For the reasons discussed above, the claims of Scienti-

fic and Scimed do not arise under federal law. In addition, the requirements of Due Process are not met here. Applying *Nowak*'s tripartite analysis, Bonzel's forum state contacts do not satisfy the purposeful availment and reasonableness prongs. The question whether Bonzel is beyond the jurisdictional reach of any state court of general jurisdiction is thus rendered academic. This Court does not have jurisdiction over Bonzel under Rule 4(k)(2).

## IV. CONCLUSION

For the reasons stated above, Bonzel's motion to dismiss [Docket No. 18] is AL-LOWED.